His Honor, CHARLES P. CLAIBORNE,
rendered the opinion and decree of the Court, .as follows:
This is an injunction suit .against executory process on the ground of partial payment.
The plaintiff, Rea, alleges that by act of Felix J. Dreyfus, notary public, dated December 9th, 1908, the Metropolitan Building Company sold to William A. Riggs, a certain property for the price of $3,750, of which the said Riggs paid cash $250, .and for the balance he issued notes, one for $200 at ninety days, and the other for $3,300 at one year after date; that petitioner is the holder and owner for value before maturity of said note of $3,300 which is past due and unpaid and on which there is a balance due of $2,926.50, and he prays for executory process, and for the seizure and sale of the property sold.
The heirs of W. A. Riggs enjoined the order for executory process and averred:
First: That the said note of $3,300 was given by Riggs in accordance with a building contract dated De *61 cember 9th, 1908, between said Riggs and the Metropolitan Building Company; that in accordance with said contract Riggs paid to the Metropolitan Building Company on account of said note, the sum of $2,840.50, of which $1069.79 represented the interest and $1770.71 was in deduction of the capital, leaving a balance due on September 16th,.1913 of $1,529.29.
They further alleged'that the plaintiff, Benjamin 'C. Rea, had previously had numerous dealings with the Metropolitan Building Company from which he acquired said note and that he knew that the note did not represent the character of the transaction between Riggs :aad the company, and he also knew that the real contract represented a transaction by which the said note might be reduced by partial payments made from time to time, and that said note was not in fact to be payable in accordance with its terms.
They further allege that on September 16th, 1913, they offered to tender the said balance of $1,529.29 to said Rea who refused to accept it.
They prayed for judgment recognizing that said note is reduced to $1,529.29 and condemning Rea to accept said, sum in full payment thereof.
In answer to the petition for an injunction Rea denied that he had any knowledge of the building contract; b* .averred that the only payments he knew of were those that appear on the back of the note, and that he is not bound by any other; that if Riggs made other payments to the Company they were made to it as the agents of Riggs and accepted by said Company as deposits, all without the knowledge of Rea; and that Riggs was guilty of gross negligence in not having the payments entered upon the back of the said note.
*62 The building contract recites the fact of the act of sale and the issuance of the note and provides that Biggs obligates himself to pay the note of $3300 by means of regular monthly payments of not less than $39.60, and “annually from the sum of these payments shall be first deducted the annual interest, on the amount of the loan remaining unpaid at the commencement of the current year of the notes and the balance shall be applied directly to the partial payment of the face of the notes less the amount which may be due the company for penalties or for disbursements for the account of the party of the first part (Biggs). ’ ’
There was judgment in favor of the heirs of Biggs and against Bea and he has appealed.
The evidence satisfies us that neither Biggs nor his heirs knew that their note had changed hands >and that they believed when they made the payments to the building company that they were making payments to the company as their creditor and as holder of the note upon which they were making payments. This is conclusively shown by the testimony of two of the daughters of Biggs and by documents.
Mrs. Alma S. Walls, daughter of W. A. Biggs, testifies that the president of the company never told her that the company did not hold the note; that she went every month according to the agreement at the office of the company to deposit a certain amount of money; the first time she heard of it was when she received a letter from Mr. Benedict after the failure of the company; her father died May 23rd, 1909; she thought the company held the note.
It is admitted that Mrs. Wall’s sister would give the same testimony if put on the stand.
*63 In corroboration of their testimony the Riggs daughters filed in evidence thirty six documents which read as follows:
‘ ‘ Office of the Metropolitan Building Co., $40.00— New Orleans, June 9th, 1909.
“This is to certify that we have this day received from Misses Alma and Hazel Riggs forty and no/100 dollars as a deposit to be paid on account of mortgage loan on property W. A. Riggs in Baronne St., between Robert & Lyon Streets.
“The Metropolitan Building Company,
“J. C. Diboll, President.”
If these documents were issued monthly as Mrs. Wall testifies they would extend to the year 1912.
in addition to these documents the company writes to Misses Alma and Hazel Riggs on September 19th, 1910:
“We are having our periodical checking made on our books and we hand you herewith a memorandum showing what payments you have made to us on your installments since the beginning. We will thank you to promptly check this up with your receipts and advise us at once if you find any discrepancies. ’ ’
On September 28th, 1910, the company repeats this letter.
On April 3rd, 1913, they write a third letter as follows:
“As explained you by Miss Gregoire, the statement that you received does not show some interest due you and some that you owe us. We simply *64 wanted to give you. an .approximate statement to check up. We would like to continue to carry your loan for .a year or two at least, as it i.s such a good one, and if you are satisfied to allow it to remain with us for a while longer, we will carry it at as low .a. rate of interest a.s you can get anywhere else and save you thereby the cost of examination of title,” etc.
But on September 2nd, 1913, the Riggs heirs received' the following letter:
“The Metropolitan Building Company has been -placed in the hands of a receiver on Aug. 26, 1913. Your mortgage note originally given said company is now the property of our client, Captain R. C. Rea- On his behalf, we beg to say that we shall, within the legal delays, .appeal from the judgment appointing the receiver, .and that any payments that you may make to the receiver or to any one else, will be made at your peril. Please govern yourself accordingly.
(Signed) ‘ ‘ Yours truly,
“MeCloskey & Benedict.”
It is also conclusively shown that Rea knew of “a” building pon tract, that he knew that Riggs and his hens were making partial payments of said notes to the building company, that the yearly interest was paid to him by the building company in 1909, 1910, 1911 and 1912 out of the partial payments made by Riggs. This is proved by his testimony .and by the following documents:' Rea received the note from the company on January 13th, 1909; he did not pay cash for the note, but on January 4th, 1909, he gave his check for $800. On January 9th, 1909, the company wrote to' him: “As the house is *65 now slated, will appreciate a check for the second installment when convenient to you,” whereupon on January 13th, he gave the company another check for $850, on January 29th, .another for $825, and on April 10th a last one for $825, making a total of $3',300.
In his testimony Mr. Rea says: “I was to advance tne money as the building was completed, or, as the buildings were being erected. The contract agreement was that I was to be amply protected,” etc. He had taken some of the vendor’s lien mortgage papers previously; Sometime» he loaned the company money and took vendor’s notes as collaterals, other times he bought the vendor’s notes as in this case; he knew the Metropolitan Building Company was engaged in erecting buildings; he was not familiar with their mode of doing business, altogether; he had investigated the transactions he had made wim them but not any others; he objected to state how much money he loaned the company; he made .eighteen loans in all; the amount was in excess of $40,000; he had heard and had been told it was understood with the person for whom the improvements were being put up, that they were to pay to the company in installments; they built the buildings for cash and for payments under a sort of homestead plan. On December, 1910, he called at tile office of the Metropolitan Building Company to demand payment of the interest, and the president told him Mr. Riggs had not paid it but that he would pay it for Mr. Riggs, if he would carry the note for another year, as Mr. Riggs in the meantime would most likely take up the note, .and the president paid him the interest; in December, 1911, he again called at the office of the company and the president paid him the interest and a partial payment and “stated that that was the amount that Mr. *66 Biggs had paid in that year, and that he had come in and asked him if he would not carry it;” the indorsement of December, 1.912, was made under the same circumstances; an che endorsements were made by the president; he presumed that the president had authority to do so; lie never notified Mr. Biggs that he held the note until McCloskey & Benedict wrote the letter of September 2nd, 1913; he had no' occasion to do so, >as the president of the company stated that Mr. Biggs had made partial payments in excess of his interest which he wanted to .apply to the principal of the note; he was told that the company was operating under the monthly payment plan.
It cannot be said that the Biggs heirs were making these monthly payments to the company .as their agent to be paid over to the holder of the note, for the simple reason that the Biggs’ heirs were not aware that tlie company had transferred the note, or that the note was held by any one else; and it is conclusively shown that they believed that they were making payments to the company as holders of the note and as their creditor.
On the other hand it is proven that Bea knew that these payments were being made to the company by the Biggs heirs under.the above circumstances; he ratified and approved the payments thus made monthly for more than three years; he tacitly constituted the company his negotiorum gestor or collector or agent to receive the payments made by Biggs’ heirs for account of the note held by him; the payments were thus made to a person duly authorized by him to receive them, and if that person has failed to account for the payments thus made he must bear the loss and hot the debtor.
The Judge of the lower Court has given an elaborate opinion couched in more convincing language in which he *67 ' comes to the same conclusion. We had occasion to pass this day upon another case presenting practically the same issues in Wolf vs. Thomas, No. 6511.
Plaintiff, Rea, avers in his -answer that: “if the allegations of this paragraph as to said building contract be true, that, as a matter of law, as said document was not recorded, your respondent could not be held bound thereby in any • event, knowledge not being equivalent lo registry under our law. ’ ’
This defense cannot avail him for two reasons:
First: We do not base our opinion upon the existence or upon his knowledge of the existence of this building contract. We base our opinion upon the fact that he was aware of the manner in which Riggs was making those payments, and that he had sanctioned it.
Second: Registry has no place in this discussion There is no question of the validity of a sale or of a mortgage or even of a note; the question is as to the validity of payments made upon a note. We are dealing with a note and not a property.
39 A., 732, Morris vs. Cain.
Rut the judgment of the lower Court appears to us erroneous in perpetuating the injunction, inasmuch as Riggs’ heirs admit owing a part of the note sued on. The whole writ of executory process cannot he enjoined on the ground of partial payment. If it issues for more than is due the injunction can be maintained only for the amount of the credit not allowed.
Dorsey, Ct. of Ap., No. 6339.
It is therefore ordered, adjudged and decreed that the judgment of the District Court herein be amended, and accordingly it is now ordered that the order for executory process herein be reinstated to the extent of on-, *68 thousand five hundred and twenty-nine 29/100 dollars, that plaintiff’s prayer for interest, attorney’s fees, and costs be rejected, provided the defendant shall pay the aforesaid sum of $1,529.29 within three days after this judgment shall become final, otherwise his right thereto to become absolute; it is further ordered that the costs of the appeal he paid by defendants, the heirs of W. A. Riggs.
Opinion and decree, December 20th, 1915.
'Rehearing refused, both applications, January 17th, 1916.
Writ denied, February 8th, 1916.
Judgment amended and-affirmed.